**People of the State of Illinois, Plaintiff-Appellee, v. Carl Wildey, Defendant-Appellant.**

**Gen. No. 50,293.**

First District, Fourth Division.

August 28, 1967.

Harry J. Busch, of Chicago (Jason Ernest Bellows and Sherman C. Magidson, of Chicago, and John A. Graf, of Evanston, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

The defendant, Carl Wildey, and LeRoy Hartle were indicted on June 29, 1962, for forgery.[1] After a separate jury trial the defendant, Carl Wildey, was convicted of that offense and was released on probation for a period of five years with the condition that he repay the sum of $12,500 within ten months.

## Contentions on Appeal

1. Defendant was not proven guilty beyond a reasonable doubt in that the principal witness for the prosecution was impeached;

2. Defendant was denied his right to a speedy trial, as required by the Four Term Act;

3. Defendant did not receive a fair trial.

## Evidence

The following facts are not substantially in dispute. For a time prior to August 6, 1959, the defendant, Le

---

[1] The codefendant, LeRoy Hartle, entered a plea of guilty.

Roy Hartle and one Carl Ruhl were in the insurance business in Blue Island, Illinois, in an insurance agency known as Hartford Enterprises. This company was the agent of the American Bankers Insurance Company of Florida, and it was also engaged in adjusting insurance claims. The defendant was president of Hartford Enterprises, Hartle was vice-president and Ruhl was another officer. In addition to Hartford Enterprises, the three had also set up another corporation known as Wil-Hart Automotive Inc. The purpose of this business was to provide a garage to repair automobiles owned by insureds of Hartford Enterprises. Defendant was president of that company and Hartle was vice-president.

At this point the testimony diverges from agreement. Hartle testified that the garage business did not succeed and that he was instructed by defendant to prepare false claims in order to obtain money; that on August 6, 1959, he (Hartle) then took the insurance policy of Walter Krueger from the files, made up a fictitious statement of loss along with a repair bill and duplicate drafts, and signed the assured's name to the statement of loss and the other supporting forms (which contained a description of a loss which never occurred), all without authority from Krueger, the assured. Hartle also prepared and signed the drafts on American Bankers, which were payable to Wil-Hart Automotive Inc. He then gave some papers relating to the claim to defendant, who checked them to see that they were complete and then crumpled them so they would look as though they had gone through an automobile repairman's hands; the claim papers were mailed to American Bankers in Miami, Florida, where they were received in the normal course of business, processed and the draft deposited in the Beverly Bank by defendant. The draft was then honored by the Miami bank of American Bankers resulting in payment of the claim and a credit in the Beverly Bank account of Wil-Hart Automotive Inc. The drafts on

American Bankers drawn in connection with the false statements of loss were all deposited by defendant in the Beverly account in which only defendant could make deposits and withdrawals and his signature was the only one authorized on checks relating to the business.

Hartle also testified that on prior occasions defendant had ordered other "phoney baloney" claims to be made in a similar manner.

At the trial defendant testified and denied his guilt. Defendant related his limited duties in the business, stating that he would come to the business in the morning, open the mail, make deposits, would make a few phone calls, go to lunch and then would not be at the office for the rest of the day. Defendant stated that he never told Hartle to draw false claims. He denied having crumpled or dirtied various claim papers. He admitted that he had control over the money belonging to the business, that he was the only authorized signature on the bank accounts, that only he could withdraw money or write checks on the Beverly Bank, and that he used the bank account to pay some of his bar bills. Defendant admitted the drafts "went into the bank account upon which I was the only signature that could withdraw the money after it went in." He stated that he had started the Wil-Hart Account at the Beverly Bank with $1,000 of "his own money" but admitted that he withdrew it later. He admitted that he drew a salary of $500 per month from the business while Hartle drew no salary. "There were no checks paid to Hartle. He never drew a nickel. He would live off his income from the previous business." He also stated that he was unsophisticated about the insurance business, but he acknowledged that he knew that the claim papers had to be sent to the Florida Insurance Company before the drafts would be honored.

Clarence Malloy and Robert Keleher, acknowledged business friends of the defendant, testified that Hartle

277

had a poor reputation for integrity and honesty. Malloy, Keleher and two other witnesses testified that defendant had a good reputation.

Carl Ruhl testified in rebuttal and corroborated the testimony of Hartle. He stated that defendant controlled the business bank accounts; that he saw defendant crumple proofs of loss; that defendant would always check the proofs of loss to make sure they were complete and that defendant then made sure they were mailed so the drafts would be paid by the Beverly Bank. He further stated that on May 15, 1959, he saw Hartle give defendant a statement of loss and defendant put it and other documents on the floor and that defendant walked on them and rolled the castors of his office chair back and forth over them; that he heard defendant tell Hartle to prepare "some more of those phoney baloney claims." Ruhl also testified that defendant had a poor reputation for truth and veracity.

I. Defendant first contends that he was not proven guilty beyond a reasonable doubt because the principal prosecution witness, LeRoy Hartle, was impeached. We would point out that Hartle's testimony as to the facts concerning the crime was contradicted only by defendant. Two other defense witnesses, Keleher and Malloy, testified only as to Hartle's allegedly poor reputation for truth and veracity. However, the reliability of their testimony was subject to question since (1) Keleher did not know where Hartle lived and had no association with businessmen having dealings with Hartle in 1959; (2) Malloy had no contact with neighbors or business people who had contact with Hartle; (3) Malloy employed Hartle in his insurance business subsequent to Hartle's association with defendant; and (4) Malloy testified that he and Keleher secured an attorney for Hartle in the instant case and pending indictments.

The testimony of an accomplice is sufficient to sustain a conviction. People v. Nitti, 8 Ill2d 136, 133

NE2d 12. In that case the court stated at pages 138–139:

> This State has always followed the common-law rule that the uncorroborated testimony of an accomplice, if it satisfies the jury . . . beyond a reasonable doubt, is sufficient to sustain a conviction of a felony . . . . We have, however, recognized that such testimony is not of the most satisfactory character and is attended with serious infirmities which require utmost caution in relying upon such evidence alone . . . . Such considerations go to the questions of the weight of the evidence or credibility of the witnesses, which questions are peculiarly the province of the jury . . . in the first instance. The jury . . . has opportunities not possessed by a court of review, to form a correct estimate of the credibility of witnesses and the weight of their testimony. For these reasons if the jury . . . is satisfied by the testimony of an accomplice, beyond a reasonable doubt, the judgment should not be set aside unless it is plainly apparent to the reviewing court that the defendant was not proved guilty beyond a reasonable doubt . . . .

Thus, in the instant case the credibility of LeRoy Hartle was for the determination of the jury. Defendant does not contend that the evidence is insufficient to establish his guilt if Hartle's testimony is believed by the jury. The jury believed the testimony of Hartle and did not believe defendant's denial of guilt. Therefore, we find that defendant was proven guilty beyond a reasonable doubt.

2. Defendant next contends that the trial court erred in denying his motion for discharge because he allegedly was not brought to trial within the time allowed under the Four Term Act (Ill Rev Stats 1961, c 38, § 748). That Act provides:

Any person committed for a criminal or supposed criminal offense, and not admitted to bail, and not tried by the court having jurisdiction of the offense, within four months of the date of commitment, shall be set at liberty by the court, unless the delay shall happen on the application of the prisoner, or unless the court is satisfied that due exertion has been made to procure the evidence on the part of the People, and that there is reasonable ground to believe that such evidence may be procured at a later day in which case the court may continue the cause for not more than sixty (60) days. If any such person shall have been admitted to bail for an alleged offense, other than a capital offense, he shall be entitled, on demand, to be tried within four months after such demand: Provided, that if the court shall be satisfied that due exertion has been made to procure the evidence on behalf of the People and that there is reasonable ground to believe such evidence may be procured at a later day the court may continue the cause for not more than sixty (60) days.

Defendant was charged in the instant case with forgery in that he allegedly drafted and signed a false statement of loss in order to collect insurance proceeds in the amount of $174. The indictment was returned on June 29, 1962. Previously the defendant, on September 30, 1960, had been charged with embezzlement and conspiracy to obtain by false pretenses the property of an insurance company, in the amount of $30,000. The charge of embezzlement and conspiracy were dismissed under the Four Term Act on April 12, 1961. In his petition for discharge in the instant case defendant alleged that the monies involved in the cases which were dismissed were the same monies involved in the instant case; and that all facts in the instant case were known

280

to the prosecuting authorities at the time of the institution of the charges in 1960.[2] From these allegations defendant contends that the purpose of the Four Term Act is to give legislative effect to the constitutional right to a speedy trial; that since the alleged forgery, and the embezzlement and conspiracy, arose out of the same act he should have been charged with the forgery initially (in 1960); and that therefore the prior discharge applies to the forgery indictment.

We do not believe that the defendant was deprived of his right to a speedy trial. The forgery trial, from which this appeal is taken, is not a continuation of the proceeding commenced in September 1960. It came after a separate and distinct indictment which was filed in 1962. Defendant does not contend on appeal that the prosecution for forgery has resulted in double jeopardy. Furthermore, section 3–3 of the Criminal Code of 1961 (Ill Rev Stats, c 38, § 3–3), effective January 1, 1962, which provides that under certain circumstances all offenses based upon the same act must be prosecuted in a single prosecution, is inapplicable to this case because its effective date was subsequent to the discharge of the original action.

■■ As support for his position that he was deprived of his right to a speedy trial defendant cites Klopfer v. North Carolina, 386 US 213. In that case the petitioner's trial on a North Carolina criminal trespass indictment ended with a declaration of a mistrial when the jury failed to reach a verdict. After the case had been postponed for two terms, petitioner filed a motion with the trial court in which he petitioned the court to ascertain when the State intended to bring him to trial. While this motion was being considered, the State's prosecutor moved for permission to take a "nolle

---

[2] The State denied those allegations.

prosequi with leave," a procedural device whereby the accused is discharged from custody but remains subject to prosecution at any time in the future at the discretion of the prosecutor. The Supreme Court held that the petitioner had been deprived of his right to a speedy trial. That case, however, is wholly inapplicable to the case at bar since in that case the accused could be tried at any time under the original indictment and thus there was an indefinite continuation of a pending indictment. In the instant case the forgery trial was not under the indictment of 1960. Rather, defendant was tried under a new 1962 indictment for forgery within the requisite time from the date of his arrest under that indictment. We therefore find that he was not denied a speedy trial.

3. Defendant next contends that he did not receive a fair trial arguing (a) that cross-examination of LeRoy Hartle was improperly restricted and (b) Carl Ruhl, a prosecution witness, was improperly allowed to testify in rebuttal.

■ With regard to the cross-examination of Hartle, defendant asserts that he was improperly restrained from questioning the witness concerning other indictments pending against him. An examination of the record reveals that defense counsel was allowed to bring out that seven other indictments were pending against Hartle for forgery and confidence game, but he was not allowed to inquire into the details of those alleged crimes. The court allowed defense counsel great latitude in his cross-examination of this area and we find that no error was committed.

■ Defendant next argues that Carl Ruhl was improperly allowed to testify in rebuttal. However, at trial defendant did not object to the overall testimony of Ruhl and the objection cannot be raised for the first time on review.

## Holding on Appeal

We find that the defendant was proven guilty beyond a reasonable doubt and that he received a speedy and fair trial. Therefore the judgment of the trial court is affirmed.

Affirmed.

ENGLISH, P. J. and McCORMICK, J., concur.

